# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

CATHERINE R.[1],

        Plaintiff,

   v.

ANDREW M. SAUL, Commissioner
of Social Security,

        Defendant.

Case No. 6:19-cv-232-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller  and Katie J. Taylor, HARDER, WELLS, BARON & MANNING, PC,
474 Willamette  Street, Eugene, OR 97401.  Of Attorneys for Plaintiff.

Billy  J. Williams,  United  States Attorney,  and Renata  Gowie,  Assistant  United  States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Lars J. Nelson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security  Administration,  701 Fifth  Avenue,  Suite 2900 M/S 221A, Seattle, WA 98104.  Of
Attorneys for Defendant.

---

[1] In the interest of privacy,  this opinion  uses only the first name and the initial  of the last
name of the non-governmental  party in this case. When applicable,  this Opinion  uses the same
designation  for a non-governmental  party's immediate  family member.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiff Catherine R. brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under Title II of the Act. For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for SSI on November 18, 2013. AR 22. In her application, she alleged disability beginning September 8, 2009. *Id.* Plaintiff's claim was denied initially on May 22, 2014 and upon reconsideration on September 2, 2015. *Id.* Plaintiff appealed and testified at a hearing held before an Administrative Law Judge ("ALJ"). On November 30, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. AR 22-36. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied the request for review, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). AR 1. Plaintiff was born on September 3, 1969, making her 40 years old at the time of the alleged disability onset. AR 72.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since the date of alleged disability onset. AR 24. At step two, the ALJ found that Plaintiff has the following severe impairments: a history of venous malformation with vascular neurocognitive disorder; borderline intellectual functioning; cannabis use disorder; posttraumatic stress disorder ("PTSD"); major depressive disorder; unspecified anxiety disorder; bilateral carpal tunnel syndrome ("CTS"); and cervical degenerative disc disease. AR 24-25. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25-27.

At step four, the ALJ determined Plaintiff's RFC and found that Plaintiff could perform

> sedentary work with the following additional limitations. She is
> limited to no more than frequent climbing of ramps and stairs and
> occasional climbing of ladders, ropes, and scaffolds. She can
> frequently balance, occasionally crouch, and frequently crawl. She
> needs to avoid concentrated exposure to workplace hazards, such
> as heights and heavy machinery. She can understand, remember,
> and carry out simple, routine, repetitive tasks.

AR 27-34. Based on these limitations, the ALJ found that Plaintiff could not perform any past

relevant work. AR 34. At step five, the ALJ found that, considering Plaintiff's age, education,

work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the

national economy, specifically Escort Vehicle Driver. AR 35. The ALJ thus concluded that

Plaintiff was not disabled. *Id*.

## DISCUSSION

Plaintiff contends that the ALJ erred in three ways. First, she argues that the ALJ

improperly rejected the opinions of Drs. Scott Alvord and Gregory Cole. Plaintiff also asserts

that the ALJ failed to provide sufficient reasons for discounting Plaintiff's subjective symptom

testimony. Lastly, Plaintiff argues that the ALJ failed to include all her functional limitations in

the RFC, specifically handling and fingering limitations connected to her carpal tunnel

syndrome.

## A.  Medical Opinions

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes

between the opinions of three types of physicians: treating physicians, examining physicians, and

non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a

treating physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a reviewing physician's." *Holohan v.

Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). A treating doctor's opinion that is not

contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### 1.  Opinion of Dr. Scott Alvord, Psy.D.

Dr. Alvord was Plaintiff's consultative examining psychologist. Dr. Alvord diagnosed Plaintiff with PTSD and major depressive disorder and concluded that Plaintiff's ability to follow instructions was mildly to severely impaired, and her concentration, persistence, or pace was moderately to severely impaired. The ALJ gave no weight to Dr. Alvord's opinion because his opinion was

> based on the objective findings of a one-time in-person examination, and those objective findings are inconsistent with the record as a whole, including the claimant's longitudinal medical records and the contemporaneous objective findings elicited in the consultative neurological examination [with Dr. Anthony Glassman] just a few weeks previous. Furthermore, an opinion that a claimant has mild to severe impairment in following instructions is a broad limitation covering both extremes and provides little

> probative value in evaluating the claimant's actual level of
> functioning.

AR 32. Dr. Glassman had given Plaintiff a mini-mental state examination, a series of questions that measure Plaintiff's orientation, registration, attention and calculation, recall, and language capacities. Plaintiff score a 29 out of a possible 30 points. AR 671. The ALJ specifically noted that Plaintiff "recalled all three objects immediately and after a delay. She performed the serial sevens task without difficulty and spelled the word "world" backward." AR 30.

Plaintiff points out, however, that Dr. Alvord's opinion was consistent with the opinion of Dr. Gregory Cole, another psychiatrist who examined Plaintiff, and argues that it was inappropriate for the ALJ to discount Dr. Alvord's opinion because it diverged from the findings of Dr. Glassman, who primarily examined Plaintiff to evaluate her somatic symptoms. Dr. Glassman's evaluation of Plaintiff's mental functioning was limited, and a "Mini Mental State Examination," Plaintiff says, and should not be used as evidence to discount Dr. Alvord's more thorough examination.

Plaintiff believes that Dr. Alvord's opinion was more reliable than Dr. Glassman's, but it is the ALJ's responsibility to weigh conflicting medical evidence in the record. *Carmickle*, 533 F.3d at 1164. As long as the ALJ provides a specific and legitimate reason, she may discount or rejected a contradicted medical opinion. The ALJ did so here. Dr. Alvord stated that Plaintiff's ability to follow instructions was impaired, yet Plaintiff was able to follow a three-step instruction in the mini mental state examination with Dr. Glassman. AR 671. Dr. Alvord stated that Plaintiff struggled to concentrate, but when Plaintiff met with Dr. Glassman, she was able to spell "world" backwards and recall three objects that Dr. Glassman had presented earlier in the exam. *Id*. Although Plaintiff's view of the medical evidence is reasonable, the ALJ satisfied the requirement to provide specific and legitimate reasons for rejecting Dr. Alvord's opinion.

## 2. Opinion of Gregory Cole, Ph.D.

Dr. Cole conducted a consultative neuropsychological evaluation in July 2015. Dr. Cole diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder, cannabis use disorder, major vascular neurocognitive disorder, and borderline intellectual functioning. Dr. Cole

> indicated that Plaintiff had some difficulty sustaining simple routine tasks, but no problems completing a simple multiple-step task. She also had difficulties with visual motor speed, scanning and searching, dealing with numeric aid linguistic symbols, executing a sequential sensory motor activity, and maintaining and alternating smoothly between parallel mental tasks. She also had below average auditory memory, visual memory, visual working memory, immediate memory, and delayed memory.

AR 33. The ALJ gave some weight to Dr. Cole's opinion because it was based on a one-time examination and was consistent with the objective findings from that examination. *Id.* The ALJ then stated that "[w]hile Dr. Cole indicated areas of difficulty for the claimant, he provided no specific functional limitations. I have assigned degrees of limitation consistent with the objective findings of the in-person evaluation, the claimant's longitudinal medical records, and the claimant's activities of daily living." *Id.*

Plaintiff's objection to the ALJ's decision lies with the failure to include any functional limitation related to Plaintiff's ability to perform simple, routine tasks. Because Dr. Cole noted that Plaintiff had trouble sustaining such tasks, Plaintiff contends, the ALJ effectively rejected that portion of Dr. Cole's opinion without explanation. But the ALJ "is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Dr. Cole's statement, in context, is ambiguous. Dr. Cole stated that Plaintiff "had some difficulty sustaining simple routine tasks, but no problems completing a simple multiple-step task were observed." AR 690. Plaintiff may object

to how the ALJ translated Dr. Cole's statement into a concrete functional limitation, but the ALJ's interpretation is entitled to deference. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Because the ALJ's interpretation of Dr. Cole's opinion was reasonable, he did not err in failing to include a limitation on Plaintiff's ability to perform simple, routine tasks.

## B. Plaintiff's Testimony

Plaintiff also contends that the ALJ erred in discounting her subjective symptom testimony without providing specific, clear, and convincing reasons for doing so. A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

At the hearing, Plaintiff testified that she had two grandchildren for whom she was no longer able to care because of her hand and memory problems. AR 48-49. She was unable to do the dishes without dropping things. AR 54. Her boyfriend helped her do her hair and get dressed. AR 55. She had trouble typing and writing because of her hand issues. AR 62. She experienced periods of uncontrollable tearfulness and had difficulty with strangers and crowds. AR 56. She experienced nervousness, anxiety, and panic attacks in public, so she tried to avoid public places. AR 57. She had not sought treatment for anxiety and depression because of homelessness and her belief that her symptoms were not that bad. AR 58-59.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 28. The ALJ explained that Plaintiff's activities of daily living and a course of treatment that the ALJ considered "conservative" undermined Plaintiff's subjective symptom testimony. The ALJ also stated that the objective medical evidence was inconsistent with Plaintiff's claimed limitations.

### 1. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ cited Plaintiff's ability to maintain her personal care, prepare simple meals, perform household chores, walk, use public transportation, shop, manage her finances, and care for her disabled adult son (work Plaintiff described as physically demanding) as activities inconsistent with Plaintiff's alleged functional limitations. AR 30. The ALJ also noted that Plaintiff continued to work after her alleged disability onset date and sometimes cares for her grandchildren. *Id.* In her free time, Plaintiff enjoys socializing, camping, and writing. *Id.*

Plaintiff's objects to the ALJ's reliance on her daily activities because the ALJ inferred that Plaintiff's care for her disabled son was physically and emotionally demanding. Plaintiff also notes that she stopped caring for her son in 2013, before, she alleges, her hand condition and mental health worsened. Although these objections have some merit, the ALJ did not rely only on this activity in finding that Plaintiff's limitations were not as severe as she alleged but evaluated all of Plaintiff's activities of daily living together.

### 2. Conservative Course of Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ characterized Plaintiff's treatment for CTS and neck pain as "conservative" because those conditions were treated with medication, braces, and occupational therapy, and

because Plaintiff never was hospitalized for CTS or neck pain. AR 30. But just after this characterization of Plaintiff's treatment, the ALJ acknowledged that Plaintiff was awaiting a CTS release surgery, undermining the ALJ's assessment. *Id*. The ALJ did not explain how CTS release was consistent with "conservative treatment."

### 3. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner will not "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ reasoned that Plaintiff's alleged symptoms were not fully supported by the medical evidence. The ALJ noted that Plaintiff sought treatment for headaches and neurological symptoms in September 2009, but her neurological exams were unremarkable (AR 29, 296, 386, 388, 390-91, 395, 707-08) and imaging revealed minimal findings (AR 29, 381). One physician described Plaintiff's neurological abnormalities as "volitional," and the facial droop and numbness she presented with improved on their own. AR 29, 385. No surgery was recommended. AR 29, 386, 694. In 2016 and 2017, she was still asymptomatic. AR 29, 889-892, 1072. The ALJ reasonably inferred this evidence undermined Plaintiff's symptoms stemming from vascular malformation.

Second, Plaintiff repeatedly alleged that she had suffered a stroke (*see, e.g.,* AR 58, 59-60, 200, 823), but some physicians ruled that out explicitly. AR 29, 288, 666. Imaging revealed only mild degeneration in Plaintiff's neck. AR 30, 1075.

Finally, although Plaintiff's CTS deteriorated over time, some of the medical evidence suggested less-debilitating problems reaching and lifting than alleged. AR 29-30; *compare* AR 212, *with* AR 907 (good muscle tone and "[n]o loss of coordination for routine tasks"), AR 938 (noting minimal swelling and "[n]o loss of coordination for routine tasks"), AR 944 (5/5 strength contrary to complaints of pain and weakness), AR 948 (4+/5 grip strength on right and 5/5 on left despite complaints of radiating pain and dropping things), AR 973 (sensation intact and no musculoskeletal issues), AR 978 (same), AR 1003 (elbow and shoulder range of motion within functional limits), AR 797 (normal strength and no extremity deformity), AR 900 ("[n]o loss of coordination for routine tasks"), and AR 1072 (sensation intact and no musculoskeletal issues).

These inconsistencies, paired with Plaintiff's activities of daily living, satisfy the ALJ's obligation to provide clear and convincing reasons supported by substantial evidence for discounting the scope of Plaintiff's alleged symptoms.

## C. RFC Calculation

Lastly, Plaintiff contends that the ALJ failed adequately to account for all of Plaintiff's limitations in the RFC, creating error at step five of the sequential analysis. In particular, Plaintiff argues that the RFC excluded the full functional limitations of Plaintiff's bilateral carpal tunnel syndrome which, if included in the RFC, would preclude Plaintiff's employment as an escort vehicle driver, the only job the ALJ identified at step five.

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically

determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The ALJ calculated an RFC that limited Plaintiff to sedentary work. The RFC also included exertional limitations of "no more than frequent climbing of ramps and stairs and occasional climbing of ladders, ropes, and scaffolds. She can frequently balance, occasionally crouch, and frequently crawl." The RFC includes no limitation to Plaintiff's ability to finger and handle resulting from her CTS. This matters because at step five, the ALJ found that Plaintiff could perform work as an escort vehicle driver, a job requiring frequent fingering and handling. AR 67.

Plaintiff details many portions of the record that show at least some limitation to her ability to finger and handle. As the ALJ noted, the record documents that Plaintiff sought evaluation of tingling and pain in the bilateral hands in March 2016. AR 956. The pain woke her up at night, and she described having blue fingers. *Id.* She presented in tears due to pain. *Id.* An examination showed positive Tinel and Phalen signs over the bilateral median nerves. AR 959. Lindsey Metcalf, M.D., prescribed Neurontin, advised Plaintiff to wear wrist splints, and referred her for an electrodiagnostic study, the results of which pointed to distal median mononeuropathies in both upper limbs and suggested "at least" moderately severe CTS. AR 956;

AR 746. Plaintiff met with Dr. Robert Kloepper, M.D., for surgical consultation given her "rather dramatic symptomology and the severity of the results." AR 747.

Plaintiff met with Dr. Kloepper in April 2016. AR 897. She described pain from the hands to the elbows and stated that she could not pick up her granddaughter or hug her grandmother. *Id*. Braces provided no relief. *Id*. She was "very tearful" at the appointment. *Id*. The middle fingers of both hands were numb, and she showed a positive Phalen's test bilaterally. AR 900. Dr. Kloepper advised Plaintiff that she could proceed with surgery when she stopped smoking. AR 901. The next month, Plaintiff reported ongoing numbness and tingling in both hands and described the pain she felt as a ten on a one-to-ten scale. AR 904. Plaintiff said she dropped everything that she tried to hold in her hands and described feeling helpless. *Id*. Dr. Kloepper noted some swelling in the hands and a blue or purple tint to the fingertips. AR 907. Plaintiff could not flex or extend the right wrist and could not grip anything with either hand. *Id*. Dr. Kloepper wrote that the blood flow in Plaintiff's hands was worrisome. AR 908.

In June 2016, Plaintiff met with Howard Feldman, M.D. and reported burning and tingling sensation in the hands. AR 750. She stated that she could hardly close her hands because of the pain. *Id*. Dr. Feldman noted that Plaintiff described typical findings of Raynaud's phenomena involving all fingers of both hands. *Id*. Plaintiff appeared depressed and was intermittently tearful during the examination. AR 752. Dr. Feldman noted that the skin over the dorsi of the fingers was thickened, and there was mild Raynaud's present. AR 752. He referred Plaintiff for a rheumatology evaluation. AR 753.

Plaintiff continued to experience severe pain and numbness in the bilateral hands. AR 951, AR 923, and AR 929. She could not hold items for any length of time without dropping them. AR 923. She could not independently dress herself. AR 929. Her right arm was swollen

and felt "gushy." *Id*. Plaintiff's wrist braces only worsened the pain, and she could not sleep through the night because of the pain. AR 923. Her right hand was swollen, she had numbness in the second through fifth fingers, with complete numbness and throbbing in the right middle finger. AR 926, 932. Dr. Kloepper again advised that she should be evaluated by a rheumatologist for Raynaud's syndrome. AR 933. In April 2017, however, Dr. Kloepper noted that Plaintiff had not been able to see a rheumatologist because insurance required that her primary care provider refer her. AR 939. He also recommended a referral to Slocum Orthopedics, a hand specialist, but similarly noted that the referral would have to come from a primary care provider. *Id*. Plaintiff then met with Debra Raumakita, F.N.P., and requested a referral to a hand surgeon. AR 946. Plaintiff reported numbness and pain in both hands that caused her to drop things. *Id*. Ms. Raumakita referred Plaintiff for physical therapy. *Id*.

In July 2017, Plaintiff established care with Lowell Smith, F.N.P. AR 976. She reported ongoing bilateral hand pain and numbness. *Id*. Mr. Smith noted significant communication difficulty with Plaintiff and wrote that Plaintiff had "some disabilities that interfere[d] with her progression through treatment." *Id*. He noted slurred speech that made it difficult to understand her. *Id*. The examination showed positive Phalen and Tinel signs bilaterally. AR 978. Plaintiff appeared stressed and was tearful, easily distracted, agitated, and anxious. *Id*. Mr. Smith assessed that he needed more information to clarify diagnosis between carpal tunnel syndrome, Raynaud's, or a rheumatoid or autoimmune concern. AR 979. He ordered lab work and increased Plaintiff's prescribed dose of Gabapentin. *Id*. The next month, Plaintiff underwent an initial evaluation for occupational therapy for her bilateral hand pain. AR 1002. By the end of the month, it was determined that further intervention would be delayed until Plaintiff underwent an MRI and was cleared for carpal tunnel release surgery. AR 1015.

Also that month, Plaintiff had a panic attack at the medical office where she was supposed to have an MRI. AR 971. She was able to undergo an MRI in October 2017, however, which showed multilevel cervical spine degenerative disc disease with mild spinal canal and mild right greater than left neural foraminal narrowing at C5-C6. AR 1075. In follow-up with Mr. Smith, Plaintiff described ongoing arm numbness, neck pain, and intermittent bilateral leg weakness. AR 1068. The examination showed positive Phalen and Tinel signs bilaterally and tenderness in all fingers. AR 1071. Plaintiff described a "zinging" feeling through both forearms up to the elbows and intermittent dragging of the feet. AR 1072. Mr. Smith assessed cervical disc disorder at C5-C6 with radiculopathy and bilateral carpal tunnel syndrome. *Id*. He recommended a neurosurgery and hand specialist evaluation and wrote, "This patient is very confusing to follow, her thoughts are scattered, but I can see she is in distress, and is seeking help for her neck pain, and carpal tunnel syndrome." *Id*.

The ALJ's analysis of Plaintiff's symptoms stemming from her CTS was conclusory. The ALJ summarized some of Plaintiff's medical records related to hand pain and noted that doctors had recommended carpal tunnel release surgery. AR 29. The ALJ apparently discounted Plaintiff's limitations due to CTS because Plaintiff was referred to occupational therapy but did not attend consistently, and because Plaintiff's CTS treatment was "conservative." AR 29-30. As discussed above, the ALJ described the treatment as "conservative" because Plaintiff's CTS was treated with medication, braces, and occupational therapy, and because Plaintiff was never hospitalized for CTS or neck pain. AR 30. But just after this characterization of Plaintiff's treatment, the ALJ acknowledged that Plaintiff was awaiting a CTS release, undermining the ALJ's assessment. The ALJ did not explain how CTS release was consistent with "conservative treatment," merely stating that "I acknowledge that the claimant is currently awaiting a CTS

release, and I have accounted for her ongoing CTS symptoms in the residual functional capacity." The RFC, however, does not limit Plaintiff's ability to handle and finger.

The lack of a limitation on Plaintiff's ability to handle and finger is problematic because the only job the ALJ identified at step five, escort vehicle driver, requires *frequent* handling and fingering. AR 67. The selection of this job at step five is also perplexing because Plaintiff testified that she has never had a driver's license, in part because of the memory problems she experiences as part of her alleged disability. AR 47. The ALJ made no finding that Plaintiff could obtain a driver's license despite her functional limitations, making it even more doubtful that Plaintiff can perform this job.

At step five, the ALJ bears the burden of showing that Plaintiff can perform work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). The ALJ did not meet that burden here. The ALJ did not adequately explain why the RFC did not limit Plaintiff's ability to finger or handle despite significant medical evidence of such a limitation.

## D. Remedy

This record is generally well-developed and the ALJ permissibly rejected the opinions of Drs. Alvord and Cole and Plaintiff's testimony. Ambiguity remains, however, about whether Plaintiff is in fact disabled. On remand, the ALJ must consider and explain whether Plaintiff has a fingering and handling limitation and, if so, whether there are jobs other than vehicle escort driver that Plaintiff can perform.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge